**137 Nev., Advance Opinion 6**

IN THE SUPREME COURT OF THE STATE OF NEVADA

TEVA PARENTERAL MEDICINES, INC., F/K/A SICOR, INC.; BAXTER HEALTHCARE CORPORATION; AND MCKESSON MEDICAL-SURGICAL, INC.,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; THE HONORABLE TREVOR L. ATKIN, DISTRICT JUDGE; THE HONORABLE NANCY L. ALLF, DISTRICT JUDGE; AND THE HONORABLE JAMES CROCKETT, DISTRICT JUDGE,
Respondents,
and
YVETTE ADAMS; MARGARET ADYMY; THELMA ANDERSON; JOHN ANDREWS; MARIA ARTIGA; LUPITA AVILA-MEDEL; HENRY AYOUB; JOYCE BAKKEDAHL; DONALD BECKER; JAMES BEDINO; EDWARD BENAVENTE; MARGARITA BENAVENTE; SUSAN BIEGLER; KENNETH BURT; MARGARET CALAVAN; MARCELINA CASTANEDA; VICKIE COLE-CAMPBELL; SHERRILL COLEMAN; NANCY COOK; JAMES DUARTE; SOSSY ABADJIAN; GLORIA ACKERMAN; VIRGINIA ADARVE; FRANCIS ADLER; CARMEN AGUILAR; RENE NARCISO; RHEA ALDER; GEORGE ALLSHOUSE; SOCORRO ALLSHOUSE; LINDA ALPY; JOYCE ALVAREZ; REBECCA L. ANDERSON; EMANUEL ANDREI; TERRIE ANTLES;

No. 81024

FILED

MAR 04 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

KELLIE APPLETON-HULTZ;
ANTHONY ARCHULETA; ESTEBAN
ARELLANOS; RICKIE ARIAS; MARK
ARKENBURG; ROGER ARRIOLA;
MARIA ARTIGA; ROBIN ASBERRY;
WINIFRED BABCOCK; ROBERT
BACH; SUSAN F. BACHAND; ELAINE
BAGLEY-TENNER; MELISSA BAL;
BRYAN BALDRIDGE; RONALD
BARKER; RONALD BARNCORD;
PEGGY JO BARNHART; DONALD
BARTLETT; SHERYLE BARTLETT;
JOSEPH BAUDOIN; BARBARA
BAXTER; VENUS BEAMON; BARBARA
ROBIN BEATTY; RODNEY BEHLINGS;
CRISTINA BEJARAN; TOMAS
BENEDETTI; VERNA BENFORD;
RICHARD BENKERT; MARSHALL
BERGERON; DONNA BERGERON;
SYLVIA BIVONA; ROBERT BLAIR;
HARRY BLAKELEY; DAWN
BLANCHARD; BONNIE BLOSS;
DARRELL BOLAR; ROY BOLDEN;
VICTOR BONILLA; GRACIELA
BORRAYES; BILLY BOWEN; SHIRLEY
BOWERS; SHIRLEY BRADLEY; CARLA
BRAUER; CAROLYN BROWN; JACK
BROWN; LESLIE BROWN; MICHAEL
BROWN; ROBERTA BROWN; AMELIA
B. BRUNS; CARL L. BURCHARD;
TRACI BURKS; ELIZABETH BURTON;
ANGELITE BUSTAMANTE-RAMIREZ;
ANASTASIO BUSTAMANTE;
DOROTHY ANN BUTLER; LEE
CALCATERRA; EVELYN CAMPBELL;
MARIA CAMPOS; BOONYUEN
CANACARIS; MELISSA CAPANDA;
MARTIN CAPERELL; PEDRO
CARDONA; SUSIE CARNEY; TERESA
CARR; BERNARDINO CARRASCO;
TRUMAN CARTER; XANDRA CASTO;

SUPREME COURT
OF
NEVADA

(O) 1947A

SPENCE CAUDLE; MARGARET
CAUSEY; XAVIER CEBALLOS;
ROBERT CEDENO; DINORA
CENTENO; ROY CHASE; CARIDAD
CHEA; ELSA CHEVEZ; LUCILLE
CHILDS; ALICIA CLARK; CAROL
CLARK; PATRICIA CLARK; RICHARD
COIRO; PERCELL COLLINS, JR.;
ERNEST CONNER; SUSAN COREY;
PATRICIA CORREA; PAUL A.
COULOMBE; AMBER CRAWFORD;
RONALD CROCKER; HOWARD
CROSS; ROSSLYN CROSSLEY;
WILLIAM R. DANIELS; EVELYN
DAVIS; MARY JEAN DAVIS; VIRGINIA
A. DAVIS; JESSIE L. DAWSON;
EMELYN DELACRUZ; SILVIA DERAS;
SHERIDA DEVINE; CLAIRE
DIAMOND; JOSE DIAZ-PEREZ; OTIS L.
DIXON; EMILIO DOLPIES; PAMELA
DOMINGUEZ; EUQENA DOMKOSKI;
JOSEPH DONATO; HUGO DONIS;
PATRICIA L. DONLEY; LJUBICA
DRAGANIC; DELORIS K. DUCK;
KATHLEEN J. DUHS; LILLIAN
DUNCAN; HAROLD DUSYK; ALLYSON
R. DYER, JR.; LOIS EASLEY; DEISY
ECHEVERRIA; ROLAND E. ELAURIA;
DARIO E. ESCALA; ENGARCIA B.
ESCALA; KATHY A. ESCALERA;
MARIA ESCOBEDO; TERESA I.
ESPINOSA; LEON EVANS; MARY
FAULKNER; ABRAHAM FEINGOLD;
MURIEL FEINGOLD; OSCAR
FENNELL; MARIETTA FERGUSON;
WILLIE FERGUSON; DANIEL
FERRANTE; CAROLYN FICKLIN; JOE
FILBECK; ETHEL FINEBERG;
MADELINE C. FINN; ALBERT L.
FITCH; ADRIAN FLORES; MARIA
FLORES; RAUNA FOREMASTER;

SUPREME COURT
OF
NEVADA

(O) 1947A

3

JOSEPH E. FOSTER; PHYLLIS G.
FOSTER; CYNTHIA D. FRAZIER;
VICTORIA FREEMAN; LAWRENCE
FRIEL; BONITA M. FRIESEN; NESS
FRILLARTE; NANCY C. FRISBY; JODI
GAINES; ESPERANZA GALLEGOS;
NEOHMI GALLEGOS; BRENDA
GARCIA; MARTHA GARCIA; SANDRA
GARDNER; MICHAEL GARVEY;
THERESA GEORGE; TINA
GIANNOPOULOS; ARIS
GIANNOPOULOS; WANDA GILBERT;
JEAN GOLDEN; GOLOB LUCIANO;
PASTOR GONZALES; JESUS
GONZALEZ-TORRES; JEFF GOTLIEB;
ALLEN GOUDY; BILL GRATTAN;
ARNOLD GRAY; BONNIE GRAY;
TANIA GREEN; ROY GREGORICH;
WILLIE GRIFFIN; VERNA GRIMES;
CANDELARIO GUEVARA; NICHOLAS
GULLI; JULIA GUTIERREZ; DENISE
F. HACHEZ; SUE HADJES; FRANK J.
HALL; TINA HALL; CHARDAI C.
HAMBLIN; ROBERT HAMILTON, JR.;
JOANN HARPER; DORIS HARRIS;
GLORICE HARRISON; SHARA
HARRISON; RONALD K. HARTLEY;
ESTHER A. HAYASHI; SAMUEL
HAYES; CANDIDO HERNANDEZ;
MARIA HERNANDEZ; THOMAS
HERROLD; LUZ HERRON; SUSAN M.
HILL; ISHEKA HINER; ARLENE
HOARD; BETH HOBBS; MICHELLE
HOLLIS; JAQUELINE A. HOLMES;
JAMES HORVATH; ANA HOSTLER;
AUGUSTAVE HOULE; CARL HOVIETZ
II; RUTH HOWARD; MICHELLE
HOWFORD; EDWARD L. HUEBNER;
LOVETTE M. HUGHES; VIRGINIA M.
HUNTER; PATRICIA HURTADO-
MIGUEL; ANGELA HYYPPA; JOSEPH

INFUSO; FRANK INTERDONATI; BRIAN IREY; CECIL JACKSON; ROLANDO JARAMILLO; RICHARD JILES; LETHA JILES; CLIFTON JOHNSON; DORIS JOHNSON; JOHNNY JOHNSON; JOYCE JOHNSON; ARNOLD JONES; ANN KABADAIAN; ANTHONY K. KALETA; ARUN KAPOOR; LINDA J. KEELER; MICHAEL F. KELLY; DARRELL KIDD; CONNIE KIM; SOO-OK KIM; TAESOOK KIM; SONDRA I. KIMBERS; ELIZABETH I. KINDLER; IRIS L. KING; JOANNA KOENIG; MICHAEL J. KRACHENFELS; CORINNE M. KRAMER; DAVID KROITOR; OLGA KUNIK; KAREN A. KUNZIG; ANEITA LAFOUNTAIN; BARBARA LAKE; BERTHA LAUREL; AGNES G. LAURON; MARIE LAWSON; PHYLLIS LEBLANC; ARLENE LETANG; JAMES A. LEWIS; JOAN LIEBSCHUTZ; MINERVA L. LIM; EDWARD LINDSEY; WILLIAM LITTLE; DOROTHY LIVINGSTON-STEEL; FELISA LOPEZ; IRAIDA LOPEZ; NOE LOPEZ; FLORENCE LUCAS; DARLENE LUTHER; FRANK L. LYLES; DEBORAH MADRID; MARWA MAIWAND; DOROTHY J. MAJOR; MARIO MALDONADO; IDA MALWITZ; AUDREY MANUEL; GABRIEL MARES; CAROL A. MARQUEZ; HUGO MARTINEZ; JORGE B. MARTINEZ; JOSE MARTINEZ; MARY LOUISE MASCARI; LUCY MASTRIAN; LEROY MAYS; LISA MAYS; VIRGINIA A. MCCALL; STELLA MCCRAY; LAURENCE MCDANIEL; JOHN MCDAVID, JR.; DOLORES MCDONNELL; DENISE ANNE

SUPREME COURT
OF
NEVADA

(O) 1947A

MCGEE; MAE MCKINNEY; JANET MCKNIGHT; FRED MCMILLEN, III; MYRON MEACHAM; AIDA A. MEKHJIAN; CHELSEY L. MELLOR; JIGGERSON MENDOZA; SUSAN MERRELL-CLAPP; JAMES MIDDAUGH; SYLVIA MILBURN; CORINNE MILLER; JANICE MITCHEL; MIKHAIL MIZHIRITSKY; KIRK MOLITOR; MARY MOORE; JOSE MORA; YOLANDA MORALES; ELIZABETH CASTRO MORALES; YOLANDA MORCIGLIO; BIVETTA MORENO; DAVID MORGAN; DENISE M. MORGAN; DOUGLAS MORGAN; SONIA MORGAN; ANDREW MORICI; BARRY MORRIS; JAMES MORRIS; JUANITA E. MORRIS; MICHELE MORSE; DAN R. MORTENSEN; MIGDALIA MOSQUEDA; ANDREA MOTOLA; ANNIE MUNA; LUCILA MUNGUIA; WILLIE MURRAY; JOSEPH NAGY; BONNIE NAKONECZNY; ERLINDA NATINGA; LEEANNE NELSON; LANITA NEWELL; ROSEMARIE NORLIN; MARSHALL NYDEN; WADE OBERSHAW; JOSEPH O'CONNELL; DIGNA OLIVA; JOHN O'MARA; L. NORMA J. O'NEA; LINDA ORCULLO; PAULA OROZCO-GALAN; ANGELA PACHECO; DENIS PANKHURST; MATT PARK; KATHY PARKINSON; JESUS PAZOS; TERESA PECCORINI; PHYLLIS PEDRO; JOSE O. PENA; PATRICIA PEOPLES; DELMY C. PERDOMO; DORA PEREZ; LOUISE PEREZ; LUIS PEREZ; MARIA PEREZ; MERCEDES PEREZ; AGUSTIN PEREZ-ROQUE; ANDRE PERRET; JANET P. PERRY; ALAN K. PETERSON;

SUPREME COURT
OF
NEVADA

(O) 1947A

6

LOWELL PHILIP; MICHELLE PHILIP; DONALD PINSKER; JASON B. PITMAN; WAYNE PITTMAN; RON POLINSKI; MOHAMMED POURTEYMAUR; DONNA POWERS; EVA POWERS; JENNIFER POWERS; JOSE PRIETO; LUISA PRIETO; FRANCISCO QUINTERO; ANTHONY RAY QUIROZ; MARIBEL RABADAN; ADRIANA RAMIREZ; JOHN RAMIREZ; RAUL RAMIREZ; ROBERT RAPOSA; CELIA REYES DE MEDINA; GABRIEL REYES; MIGUEL REYES; BARBARA ROBERTS; CONSTANCE ROBINSON; LLOYD H. ROBINSON; CONNIE ROBY; ANTOINETTE ROCHESTER; VICKI RODGERS; TREVA RODGERS; MARIA RODRIGUEZ; NENITA RODRIGUEZ; RICARDO RODRIGUEZ; YOLANDA RODRIGUEZ; JOSE RODRIGUEZ-RAMIREZ; FREEMAN ROGERS; CAROLE ROGGENSEE; SONIA ROJAS; JOSEPH ROMANO; JEAN ROSE; ROSETTA RUSSELL; DEMETRY SADDLER; JANISANN SALAS; MARIA SALCEDO; KERRI SANDERS; LOVIE SANDERS; SHERRILYN SAUNDERS; ISA SCHILLING; RAY SEAY; SANDRA SENNESS; ANTHONY SERGIO, JR.; SYLVIA SHANKLIN; DOUGLAS SHEARER; SANDRA SIMKO; JAMES SLATER; JACKLYN SLAUGHTER; JOHN SLAUGHTER; CATHERINE SMITH; WILBUR SMITH; LILA SNYDER; DOLORES SOBIESKI; WAYNE SOMMER; MARIA SOTO; JULIE SPAINHOUR; JESSICA SPANGLER; PATRICIA SPARKS; WILLIAM STANKARD; GINGER STANLEY; RODNEY STEWART; LETICIA STROHECKER; HAROLD

SUPREME COURT
OF
NEVADA

(O) 1947A

STROMGREN; MAFALDA SUDO; BARBARA SWAIN; NORMA TADEO; RYSZARD TARNOWISKI; MIRKA TARNOWISKI; ROXANNE E. TASH; JILL TAYLOR; JEANNE THIBEAULT; CATHERINE TITUS-PILATE; RAYMOND TOPPLE; DOMINGA TORIBIO; YADEL TORRES; RITA M. TOWNSLEY; ROSELYN TRAFTON; SALVATORE TROMELLO; PATRICIA A. TROPP; DOROTHY TUCKOSH; LUCY TURNER; TERRY TURNER; ROBERT TUZINSKI; WILLIAM UNRUH; JESUS VALLS; DIANNE VALONE; HILLEGONDA VANDERGAAG; HENRY VELEY; STELLA VILLEGAS; LOUIS VIRGIL; CECILIA VITAL-CEDENO; COLLEEN VOLK; CHRIST VORGIAS; WILLIAM WADLOW; BETTY WAGNER; JOHN WALTERS; JASON WALTON; JANICE WAMPOLE; BARBARA WARD; GLORIA WARD; SANDRA WARIS; LESTER WEDDINGTON; ARLENE WEISNER; KATHRYN WHEELER; FRANK E. WHITE; SERENE WHITE; SHARON WHITE; BRIDGET WILKINS; ACE K. WILLIAMS; ANTHONY WILLIAMS; AUBREY WILLIAMS; CHARLES WILLIAMS; CHERYL WILLIAMS; MARY WILLIAMS; WILLIE WILLIAMS; GARY WILSON; ROBERT WILSON; STEVEN WILT; ANGELA WINSLOW; BEVERLY WINTEROWD; BETTY WINTERS; JAMES WOLF; DEREK WORTHY; MAUREEN BRIDGES; MARIA LISS; MARY CATTLEDGE; FRANKLIN CORPUZ; BARBARA EDDOWES; ARTHUR EINHORN; CAROL EINHORN; WOODROW FINNEY; JOAN FRENKEN; EMMA

SUPREME COURT
OF
NEVADA

(O) 1947A

8

FUENTES; JUDITH GERENCES; ANNIE GILLESPIE; CYNTHIA GRIEM-RODRIGUEZ; DEBBIE HALL; LLOYD HALL; SHANERA HALL; VIRGINIA HALL; ANNE HAYES; HOMERO HERNANDEZ; SOPHIE HINCHLIFF; ANGEL BARAHONA; MARTA FERNANDEZ VENTURA; WILLIAM FRALEY; RICHARD FRANCIS; GEORGINA HETHERINGTON; JANICE HOFFMAN; GEORGE JOHNSON; LINDA JOHNSON; SHERON JOHNSON; STEVE JOHNSON; SEAN KEENAN; KAREN KEENEY; DIANE KIRCHER; ORVILLE KIRCHER; STEPHANIE KLINE; KIMBERLY KUNKLE; PATRICIA LEWIS-GLYNN; BETTE LONG; PETER LONGLY; DIANA LOUSIGNONT; MARIA KOLLENDER; DAVID MAGEE; FRANCISCO MANTUA; DANA MARTIN; MARIA MARTINEZ; JOHN MAUIZIO; ANGA MCCLAIN; BARRY MCGIFFIN; MARIAN MILLER; HIEP MORAGA; SONDRA MORENO; JIMMY NIX; NANCY NORMAN; GEORGIA OLSON; MARK OLSON; BEVERLY PERKINS; MARYJANE PERRY; RICKY PETERSON; BRANDILLA PROSS; DALLAS PYMM; LEEANN PINSON; SHIRLEY PYRTLE; EVONNE QUAST; RONALD QUAST; LEANNE ROBIE; ELEANOR ROWE; RONALD ROWE; DELORES RUSS; MASSIMINO RUSSELLO; GEOLENE SCHALLER; JAN MICHAEL SHULTZ; FRANCINE SIEGEL; MARLENE SIEMS; RATANAKORN SKELTON; WALLACE STEVENSON; ROBERT STEWART; RORY SUNDSTROM; CAROL SWAN; SONY SYAMALA; RICHARD TAFAYA;

SUPREME COURT
OF
NEVADA

(O) 1947A

9

JACQUELINE BEATTIE; PRENTICE
BESORE; IRENE BILSKI; VIOLA
BROTTLUND-WAGNER; PATRICK
CHRISTOPHER; PAUL DENORIO;
DAVID DONNER; TIMOTHY DYER;
DEMECIO GIRON; CAROL HIEL;
CAROLYN LAMYER; REBECCA
LERMA; JULIE KALSNES; FANNY
POOR; FRANCO PROVINCIALI;
JOELLEN SHELTON; FRANK STEIN;
JANET STEIN; LOIS THOMPSON;
FRANK TORRES; FRANK BEALL;
PETER BILLITTERI; IRENE CAL;
CINDY COOK; EVELYN EALY;
KRISTEN FOSTER; PHILLIP GARCIA;
JUNE JOHNSON; LARRY JOHNSON;
WILLIAM KEPNER; PEGGY LEGG;
JOSE LOZANO; JOSEPHINE LOZANO;
DEBORAH MADISON; MICHAEL
MALONE; ANN MARIE MORALES;
GINA RUSSO; COLLEEN TRANQUILL;
LORAINE TURRELL; GRAHAM TYE;
SCOTT VANDERMOLIN; LOUISE
VERDEL; J. HOLLAND WALLIS;
ANGELA HAMLER; SHARON
WILKINS; MARK WILLIAMSON;
STEVE WILLIS; BENYAM YOHANNES;
MICHAL ZOOKIN; LIDIA ALDANAY;
MARIDEE ALEXANDER; ELSIE
AYERS; JACK AYERS; CATHERINE
BARBER; LEVELYN BARBER;
MATTHEW BEAUCHAMP; SEDRA
BECKMAN; THOMAS BEEM; EMMA
RUTH BELL; NATHANIA BELL;
PAMELA BERTRAND; VICKI
BEVERLY; FRED BLACKINGTON;
BARBARA BLAIR; MICHELLE BOYCE;
NORANNE BRUMAGEN; HOWARD
BUGHER; ROBERT BUSTER;
WINIFRED CARTER; CODELL
CHAVIS; BONNIE CLARK; KIP

SUPREME COURT
OF
NEVADA

(O) 1947A

10

COOPER; MICHEL COOPER; CHRISTA COYNE; NIKKI DAWSON; LOU DECKER; PETER DEMPSEY; MARIA DOMINGUEZ; CAROLYN DONAHUE; LAWRENCE DONAHUE; CONRAD DUPONT; DEBORAH ESTEEN; LUPE EVANGELIST; KAREN FANELLI; LAFONDA FLORES; MADELINE FOSTER; ELOISE FREEMAN; ELLAMAE GAINES; LEAH GIRMA; ANTONIO GONZALES; FRANCISCO GONZALES; RICHARD GREEN; ISABEL GRIJALVA; JAMES HAMILTON; BRENDA HARMAN; DONALD HARMAN; SUSAN HENNING; JOSE HERNANDEZ; MARIE HOEG; JAMES H. MCAVOY; MARGUARITE M. MCAVOY; WILLIAM DEHAVEN; VELOY E. BURTON; SHIRLEY CARR; MARY DOMINGUEZ; CAMILLE HOWEY; LAVADA SHIPERS; JANNIE SMITH; MILDRED J. TWEEDY; KATHERINE HOLZHAUER; ALICIA HOSKINSON; GREG HOUCK; DIONNE JENKINS; JOHN JULIAN; WILLIAM KADER; MARY ELLEN KAISER; VASILIKI KALKANTZAKOS; WILLIAM KEELER; ROBERT KELLAR; SHIRLEY KELLAR; MELANIE KEPPEL; ANITA KINCHEN; PETER KLAS; LINDA KOBIGE; LINDA KORSCHINOWSKI; DURANGO LANE; JUNE LANGER; NANCY LAPA; EDWARD LEVINE; MERSEY LINDSEY; ZOLMAN LITTLE; STEVE LYONS; MARSENE MAKSYMOWSKI; PAT MARINO; BILLIE MATHEWS; KRISTINE MAYEDA; CARMEN MCCALL; MICHAEL MCCOY; ANNETTE MEDLAND; JOSPEHINE MOLINA; LEN MONACO; RACHEL

SUPREME COURT
OF
NEVADA

(O) 1947A

MONTOYA; THEODORE MORRISON; XUAN MAI NGO; JACQUELINE NOVAK; FAITH O'BRIEN; DENISE ORR; JAVIER PACHECO; ELI PINSONAULT; FLORENCE PINSONAULT; STEVE POKRES; TIMOTHY PRICE; STEVEN RAUSCH; CLIFTON ROLLINS; JOHN ROMERO; JEAN ROSE; RONALD RUTHER; JUAN SALAZAR; PRISCILLA SALDANA; BUDDIE SALSBURY; BERNICE SANDERS; DANNY SCALICE; CARL SMITH; VICKIE SMITH; WILLIAM SNEDEKER; EDWARD SOLIS; MARY SOLIZ; ROGER SOWINSKI; CYNTHIA SPENCER; STEPHEN STAGG; TROY STATEN; LINDA STEINER; GWEN STONE; PHAEDRA SUNDAY; CLARENCE TAYLOR; CATHERINE THOMPSON; MARGRETT THOMPSON; VERNON THOMPSON; DAVID TOMLIN; VON TRIMBLE; CHUONG VAN TRONG; JOHN VICCIA; STEVEN VIG; JANET VOPINEK; KATHY WALENT; LINDA WALKER; SHIRLEY WASHINGTON; MARY WENTWORTH; BETTY WERNER; SALLY WEST; DEE LOUISE WHITNEY; SHIRLEY WOODS; TONY YUTYATAT; CATALINA ZAFRA; METRO ZAMITO; CHRISTINA ZEPEDA; ANDREW ZIELINSKI; CAROLYN ARMSTRONG; BETTY BRADLEY; CHARLEEN DAVIS SHAW; REBECCA DAY; DION DRAUGH; AND VINCENZO ESPOSITO,
Real Parties in Interest.

Original petition for a writ of mandamus challenging district court orders denying petitioners' motions to dismiss the underlying consolidated tort cases on the basis of federal preemption.

*Petition granted in part and denied in part.*

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Abraham G. Smith, Las Vegas; Greenberg Traurig LLP and Tami D. Cowden, Eric Swanis, and Jason K. Hicks, Las Vegas; Greenberg Traurig LLP and Brian Rubenstein, Philadelphia, Pennsylvania; Hymanson & Hymanson and Philip M. Hymanson and Henry J. Hymanson, Las Vegas,
for Petitioners.

Wetherall Group, Ltd., and Peter Wetherall, Las Vegas; Glen Lerner Injury Attorneys and Glen J. Lerner, Las Vegas,
for Real Parties in Interest.

---

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, C.J.:

This original petition for a writ of mandamus arises from lawsuits brought against generic drug manufacturers for selling single-patient-use 50 mL vials of propofol to ambulatory surgical centers despite an allegedly foreseeable risk that the centers would use them on multiple patients. The question presented to us is whether the plaintiffs' state-law tort claims are preempted by federal drug regulations. Because we conclude

---

[1]The Honorable Abbi Silver, Justice, voluntarily recused herself from participation in the decision of this matter.

that some, but not all, of the claims are preempted, we grant the petition in part and deny it in part.

## FACTS AND PROCEDURAL HISTORY

Petitioners Teva Parenteral Medicines, Inc., Baxter Healthcare Corporation, and McKesson Medical-Surgical, Inc., manufacture and sell the generic drug propofol, also known by its brand name Diprivan. Propofol was approved for sale by the United States Food and Drug Administration (FDA) in 1989 for use as an anesthetic in outpatient and inpatient procedures. In this, the FDA has granted petitioners permission to manufacture and distribute generic propofol in three vial sizes: 20, 50, and 100 mL. The label on each vial clearly prescribes that it is for single-patient use.

Petitioners sold propofol to nonparty and now deceased Dr. Depak Desai for use at his endoscopy centers in Las Vegas. Despite warning labels to the contrary, Dr. Desai used petitioners' 50 mL single-patient vials on more than one patient. Dr. Desai was criminally charged for reusing single-use injection syringes at his clinics and for using single-patient anesthesia vials on multiple patients.[2] See Desai v. State, 133 Nev. 339, 340-41, 398 P.3d 889, 891 (2017). Due to Dr. Desai's criminal behavior, his patients received warning letters from the Centers for Disease Control and Prevention and the Southern Nevada Health District notifying them of a risk of possible infection with Hepatitis B, Hepatitis C, and HIV.

The real parties in interest (collectively, plaintiffs) are approximately 800 individuals who received the warning letters after being treated by Dr. Desai at his endoscopy clinics between 2004 and 2008.

---

[2]The parties do not dispute the criminal allegations surrounding Dr. Desai's misuse of 50 mL vials of propofol.

Plaintiffs obtained testing, and all tests came back negative. Plaintiffs sued petitioners to obtain compensation for the testing costs as well as pain and suffering associated with being tested and waiting for test results. Their complaints alleged the following claims: (1) strict product liability, (2) breach of implied warranty of fitness for a particular purpose, (3) negligence, (4) violation of the Nevada Deceptive Trade Practices Act, and (5) punitive damages.[3] Specifically, plaintiffs alleged that petitioners knew or should have known that selling 50 mL vials of propofol, as opposed to the smaller 20 mL vials, to Dr. Desai's ambulatory surgical centers with high patient turnover was unsafe because it would entice use of each vial on multiple patients, which increases the risk of contamination of the vial and infection of patients. Plaintiffs asserted that a 20 mL dose of propofol is commonly used to induce anesthesia in a patient, making the larger 50 mL vial more likely to be misused for multi-dosing at an ambulatory surgical center.

Petitioners filed a motion to dismiss in all three actions, alleging that under *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013), plaintiffs' claims must be dismissed because they conflict with federal law, specifically the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified as amended at 21 U.S.C. § 355 (1984)), commonly known as the Hatch-Waxman Act. *See FTC v. Actavis, Inc.*, 570 U.S. 136, 142 (2013). After hearing arguments, the district courts summarily denied petitioners' motions to dismiss, finding that plaintiffs'

---

[3]Initially, three different lawsuits were filed in the Eighth Judicial District Court; those lawsuits have since been consolidated into one action in Department 8.

claims are not preempted by federal law. Petitioners filed this instant writ petition.

## DISCUSSION

*Entertaining the petition*

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see also Humphries v. Eighth Judicial Dist. Court*, 129 Nev. 788, 791, 312 P.3d 484, 486 (2013). Writ relief is not available, however, when an adequate and speedy legal remedy exists. NRS 34.170; *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). Although this court generally declines to consider writ petitions that challenge a district court's ruling on a motion to dismiss, this court will exercise its discretion to consider one when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *City of Mesquite v. Eighth Judicial Dist. Court*, 135 Nev. 240, 243, 445 P.3d 1244, 1248 (2019) (internal quotation marks omitted).

We conclude that whether the Hatch-Waxman Act preempts plaintiffs' state-law claims against a generic drug manufacturer is an important issue of law that needs clarification. Further, considerations of sound judicial economy and administration militate in favor of entertaining this petition because of the early stage of litigation and the vast number of plaintiffs involved in the consolidated action. Thus, we exercise our discretion to entertain the petition.

*Preemption*

Whether state-law claims are preempted by federal law is a question of law that this court reviews de novo, without deference to the

findings of the district court. *Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007). The Supremacy Clause of the United States Constitution provides that federal law supersedes, or preempts, conflicting state law. U.S. Const. art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("A fundamental principle of the Constitution is that Congress has the power to preempt state law.").

There are two types of preemption—express and implied. *Rolf Jensen & Assocs., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. 441, 445, 282 P.3d 743, 746 (2012). Express preemption occurs when Congress explicitly declares in the statute's language its intent to preempt state law. *Id.* If the statutory language does not expressly preempt state law, preemption may be implied if the federal law dominates a particular legislative field (field preemption) or actually conflicts with state law (conflict preemption). *Id.* (citing *Nanopierce Techs.*, 123 Nev. at 371, 168 P.3d at 79-80).

Petitioners contend that conflict preemption applies here because the Hatch-Waxman Act imposes duties on them that conflict with the duties imposed under state tort law. Conflict preemption occurs where "it is impossible for a private party to comply with both state and federal requirements." *Mensing*, 564 U.S. at 618 (internal quotation marks omitted). Petitioners argue that as generic drug manufacturers, they are unable to both comply with their duties under the federal drug regulations and avoid state-law tort liability. They rely on two decisions by the United States Supreme Court—*Mensing* and *Bartlett*—which they argue preclude plaintiffs' claims.

Mensing *and* Bartlett

In *Mensing*, the plaintiffs sued generic drug manufacturers for failing to provide adequate warning labels on a generic drug that carried a

SUPREME COURT
OF
NEVADA

(O) 1947A

17

risk of a severe neurological disorder with long-term use. *Id.* at 610. The plaintiffs claimed that the manufacturers knew or should have known about the risk and that they had a duty under state law to adequately warn of it. *Id.* The Supreme Court found that the state-law claims were preempted because the manufacturers' duty under state law conflicted with their duty under federal drug regulations. *Id.* at 618. The Court explained that the Hatch-Waxman Act, which established an abbreviated process for FDA approval of generic versions of brand-name drugs, imposed a duty of "sameness" on the generic drug manufacturers. *Id.* at 612-13. This duty requires manufacturers to demonstrate that their generic drugs are identical to the brand-name drug in active ingredients, safety, efficacy, and warning label. *Id.* at 612-13 & n.2. By ensuring that their generic drug is equivalent to an FDA-approved brand-name drug, generic drug manufacturers can obtain FDA approval without undergoing the costly and lengthy clinical testing required for brand-name drugs, thereby expediting the introduction of low-cost generic drugs to the market. *See id.* at 612.

The *Mensing* Court compared this federal-law duty of sameness to the state-law duty, concluding that "it was impossible for the [m]anufacturers to comply with both their state-law duty to change the label and their federal-law duty to keep the label the same." *Id.* at 618. The Court reasoned that, because federal law requires generic drug labels to be the same as brand-name labels, any state-law duty that requires generic manufacturers to use safer labels conflicts with the federal "duty of sameness" and is preempted by federal law. *Id.* Further, the Court rejected the argument that the generic drug "[m]anufacturers [could have] asked the FDA for help" in strengthening the warnings and thereby defeating impossibility preemption. *Id.* at 620-21. The Court stated that the

SUPREME COURT
OF
NEVADA

(0) 1947A

"question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *Id.* at 620. "[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, that party cannot independently satisfy those state duties for pre-emption purposes." *Id.* at 623-24.

Similarly, in *Bartlett*, the Court considered whether a state-law design-defect claim against a generic drug manufacturer was preempted by the Hatch-Waxman Act. 570 U.S. at 475. The plaintiff succeeded on the claim at trial, and the First Circuit Court of Appeals affirmed the jury verdict, holding that the claim was not preempted because a generic manufacturer could simply stop selling the drug to avoid liability and thus comply with both federal and state law. *Id.* at 479. The Supreme Court reversed and specifically rejected this "stop-selling rationale" as a way to avoid impossibility preemption. *Id.* at 475-76. The Court determined that the state-law claim imposed a duty on the manufacturer to redesign the drug or strengthen the warning on its label, which was not possible under federal regulations. *Id.* at 486-87. The Court concluded that "it [wa]s impossible for [the generic drug manufacturer] to comply with both state and federal law." *Id.* Thus, the state-law claim was preempted, and as explained by the Court, this preemption could not be avoided by the "stop-selling" theory: "Our pre-emption cases presume that an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability." *Id.* at 488.

Read together, *Mensing* and *Bartlett* hold that the Hatch-Waxman Act imposes a duty of sameness on generic drug manufacturers that requires the labels and design of generic drugs to be the same as the

SUPREME COURT
OF
NEVADA

(O) 1947A

corresponding brand-name drugs and precludes manufacturers from unilaterally altering the label or design of the drug. A state-law claim that imposes a duty on a generic drug manufacturer to alter either the label or the design of a generic drug, thus making it impossible for the generic drug manufacturer to avoid liability under state law without also violating its federal duty of sameness, is preempted. And preemption cannot be avoided simply because the manufacturer could have stopped selling the drug to avoid liability under state law.

*Analysis of state- and federal-law duty*

Petitioners contend that plaintiffs' causes of actions are preempted under *Mensing* and *Bartlett* because each cause of action would impose a duty on petitioners to alter either the design or the formulation of the 50 mL vial, change its warning labels, or stop selling it altogether to avoid liability. In determining whether conflict preemption exists, we must first identify petitioners' duties under state law and then determine whether those duties conflict with petitioners' federal-law duties. *See Bartlett*, 570 U.S. at 480. Plaintiffs asserted four causes of action in their complaints: strict product liability, breach of implied warranty, deceptive trade practice, and negligence.[4] Plaintiffs conceded at oral argument that their claims for strict product liability and breach of implied warranty are essentially failure-to-warn claims and are thus preempted under *Mensing* and *Bartlett*. However, they argue that their causes of action for negligence

---

[4]Plaintiffs also alleged a claim for punitive damages in their complaints, but punitive damages is a remedy and not a separate cause of action. *See Droge v. AAAA Two Star Towing, Inc.*, 136 Nev., Adv. Op. 33, 468 P.3d 862, 881 (Ct. App. 2020) ("[P]unitive damages is a remedy, not a cause of action.").

and deceptive trade practice survive because they are not premised on the labeling or design of the drug.

As to the deceptive trade practice claim, plaintiffs alleged that petitioners made representations about the 50 mL vials that were false and omitted material facts. Plaintiffs did not identify in their complaints any representations made by petitioners other than those contained in the FDA-approved labeling. *See* NRS 598.0915(5), (7), (15) (providing, generally, that a person engages in a deceptive trade practice when he knowingly makes false representations); NRS 598.0923(2) (providing that a seller who "[f]ails to disclose a material fact" engages in a deceptive trade practice). As *Mensing* and *Bartlett* make clear, petitioners could not have rectified any alleged misrepresentation without violating federal law because they were required to adhere to the brand-name drug's labeling. Thus, this cause of action is preempted under *Mensing* and *Bartlett*.

Turning to plaintiffs' negligence claim, plaintiffs alleged that petitioners owed them a duty "to distribute, market, and package the propofol in safe single use vials that are not conducive to multi-dosing." Plaintiffs further alleged that petitioners "knew, or in the exercise of reasonable care should have known, that packaging, marketing, and distributing propofol to high turnover ambulatory clinics . . . in 50 ml vials, was . . . likely to encourage or facilitate multi-dosing." Under plaintiffs' negligence theory, petitioners had a duty under state law not to package, market, or sell 50 mL vials of propofol to Dr. Desai's ambulatory surgical clinics.

To the extent that plaintiffs' negligence claim alleges that petitioners provided improper warnings or descriptions in the labeling and packaging of the 50 mL vials, such a claim is preempted, as it is clear under

*Mensing* and *Bartlett* that petitioners could not have unilaterally altered the labeling and packaging of the 50 mL vials under federal law. However, with respect to plaintiffs' claim that petitioners had a duty not to sell the 50 mL vials, we conclude that this cause of action is not preempted, as petitioners have not demonstrated that it would be impossible to comply with state law without violating federal law. The theory of this cause of action is that petitioners knew or should have known that Dr. Desai's ambulatory surgical centers were misusing the 50 mL vials of propofol labeled for single-patient use by anesthetizing multiple patients, and thus petitioners should have stopped selling 50 mL vials and sold only 20 mL single-dose vials to those centers. Petitioners contend that, to avoid liability under this theory, they would have had to either stop selling the 50 mL vials to Dr. Desai's ambulatory surgical centers or alter the size of the 50 mL vials. And, petitioners argue, the first option is precluded by *Mensing* and *Bartlett*, and the second option is preempted by conflict.

As to the first option, petitioners' duty to stop selling 50 mL vials of propofol to Dr. Desai's ambulatory surgical centers because petitioners allegedly knew that their vials were being misused, despite labels to the contrary, is not precluded by *Mensing* and *Bartlett*. Petitioners have not demonstrated that they have an absolute duty under federal law to continue selling 50 mL vials of propofol to clinics they allegedly know are misusing their product. Therefore, because petitioners' alleged state-law duty to stop selling the 50 mL to clinics it knows are misusing its product does not conflict with any federal-law duty, we conclude that plaintiffs' negligence cause of action is not preempted.

This conclusion is not affected by the Court's holding in *Bartlett* that "an actor seeking to satisfy both his federal- and state-law obligations

is not required to cease acting *altogether* in order to avoid liability." 570 U.S. at 488 (emphasis added). Though petitioners rely heavily on *Bartlett* in arguing that plaintiffs' liability theory, which would require them to stop selling the 50 mL vials, cannot be used to avoid preemption, their reliance is misplaced. In *Bartlett*, the Court held that where there is a conflict between state and federal law, preemption cannot be avoided by requiring the generic drug manufacturer to stop selling the drug. *Id*. This analysis is not applicable here where there is no conflict between state and federal law in the first instance.

In the alternative, we agree that a conflict might arise if petitioners were required to unilaterally alter the size of their FDA-approved vials to avoid liability under state law.[5] However, plaintiffs are not asking petitioners to alter their vial size, and even if they were, plaintiffs' negligence cause of action would still not conflict with federal law. This is so because petitioners already obtained approval from the FDA to market a smaller, 20 mL vial size of propofol. Thus, unlike the generic drug manufacturers in *Mensing*, petitioners would not be required to make any unilateral changes to the drug's design to comply with state law. Rather, petitioners could satisfy a state-law duty to sell only the smaller, 20 mL vials of propofol to Dr. Desai's ambulatory surgical centers without violating their federal duty of sameness. Therefore, we hold that plaintiffs'

---

[5]The Hatch-Waxman Act does not permit generic drug manufacturers to independently change a drug's strength, which includes a drug's vial size. *See* 21 U.S.C. § 355(j)(2)(A)(iii) (2018) (requiring the generic drug's "strength" to be equivalent to the brand-name drug); 21 C.F.R. § 314.3(b) (2020) (stating that a drug's "[s]trength" refers to "the amount of drug substance contained in, delivered, or deliverable from a drug product which includes . . . [t]he total quantity of drug substance in mass or units of activity in a dosage unit or container closure").

negligence claim is not preempted even if it required petitioners to change their vial size to 20 mL, because petitioners already have approval for that smaller vial size.

For the reasons stated above, we conclude that plaintiffs' negligence cause of action is not preempted by federal law and that plaintiffs' request for punitive damages also survives to the extent it derives from the negligence cause of action. However, we conclude that the remainder of plaintiffs' causes of action are preempted, and we thus grant the petition in part and deny the petition in part. The clerk of this court shall issue a writ of mandamus directing the district court to dismiss all of plaintiffs' claims except their cause of action for negligence and their request for punitive damages.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon